Filed 2/2/24  Molica v. Tempur-Sealy International CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CODY MOLICA,<br><br>　　　Plaintiff and Appellant,<br><br>v.<br><br>TEMPUR-SEALY INTERNATIONAL, INC.,<br><br>　　　Defendant and Respondent. | A167541<br><br>(San Francisco County<br>Super. Ct. No. CGC20584681) |

Appellant Cody Molica bought a $100 set of two pillows online. Apparently unsatisfied with his purchase, he attempted to return the pillows, to be advised that such a return was not permitted.  Molica filed suit against the seller, alleging three causes of action.  And judgment was entered against Molica, after a demurrer was sustained without leave to amend as to the first cause of action, and summary adjudication granted on the other two.  We affirm that judgment.

## BACKGROUND

**The Facts**

On May 4, 2020, Molica ordered two Temper-Cloud pillows through the online ordering portal of Tempur-Sealy International, Inc. (TSI).  The pillows were delivered on May 11, and the next day Molica sent an email to TSI

requesting that the pillows be exchanged.  On May 14, TSI emailed Molica, advising that the returns on pillows were not accepted given the personal nature of the product.  Six days later, Molica filed this lawsuit.

**The Proceedings Below**

On May 22, Molica filed a complaint against TSI, followed a few months later by a first amended complaint (FAC), the operative pleading here.[1]  This complaint alleged three causes of action, styled as follows: (1) breach of implied covenant of good faith and fair dealing; (2) violation of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); and (3) unfair business practices under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

TSI filed a demurrer, Molica an opposition, and TSI a reply.  The demurrer was set for hearing on December 15, prior to which the court had issued a tentative ruling.  The matter was not argued,[2] and the court adopted its tentative ruling, which (1) sustained the demurrer to the first cause of action without leave to amend, and (2) overruled the demurrer to the second and third causes of action.  Doing so, the trial court agreed with Molica that the declaration and attached exhibits that TSI filed in support of its demurrer (and were not filed as part of its request for judicial notice) would not be considered in ruling on the demurrer.

TSI filed its answer, and various discovery ensued, including written discovery to Molica and the taking of his deposition.

On October 27, 2021, TSI filed a motion for summary judgment or, in

---

[1] While the reason for the amended complaint is not in the record, what is there reveals a "meet and confer" letter from TSI's counsel advising of the intent to file a demurrer to the original complaint.

[2] Molica did not appear at the hearing; TSI's counsel did, however, for the purpose of seeking "clarification" of the tentative ruling.

the alternative, summary adjudication, set for hearing on December 27. The motion papers included a memorandum of points and authorities; a request for judicial notice; a declaration of attorney Solomon Pantuch (that attached and purported to authenticate 16 exhibits); and a 21-page separate statement of undisputed material facts, setting forth 83 items under the various causes of action. The exhibits attached to Mr. Pantuch's declaration included various discovery of Molica, including his responses to requests for admissions, his responses to interrogatories, and his deposition.

Molica filed opposition that included a four-page memorandum of points and authorities, and his statement of disputed material facts responding to TSI's separate statement. Molica's separate statement responded to only the first 34 items in TSI's separate statement—and disputed only one: "that the TSI website has a hyperlink to the return policy and also a posted return policy regarding the subject pillows on one of its pages."[3]

TSI filed a reply, and the matter came on as scheduled, on December 27. Prior to the hearing, the court issued a lengthy tentative ruling granting the motion. Molica did not contest it, and that same day the trial court filed its order granting the motion, which order began as follows: "[TSI's] motion for summary judgment is granted. The Court previously sustained without leave to amend [TSI's] demurrer to [Molica's] first cause of action for breach of the covenant of good faith and fair dealing. [TSI's] motion for summary adjudication is granted as to [Molica's] second cause of action for violation of the Consumers Legal Remedies Act ('CLRA') and his third cause of action for

---

[3] As to the remainder of the facts in TSI's separate statement, Molica's response said they were "not relevant and are undisputed," as "[t]he court did not sustain a CLRA action against [TSI]."

3

violation of the Unfair Competition Law ('UCL'), which is derivative of his second cause of action." (Original boldface omitted.)

The order then referred to some procedural deficiencies in Molica's papers, and then continued on with its analysis, a comprehensive analysis indeed—four single-spaced pages. The order went on to conclude that summary adjudication was proper because Molica failed to create a triable issue of material fact regarding TSI's liability under the CLRA, as he failed to establish he was exposed to an unlawful practice. The order also concluded that Molica failed to establish that Civil Code section 1723 was applicable as it did not pertain to internet purchases. And regarding Business and Professions Code section 17538, subdivision (d) (section 17538(d)), the order noted that Molica failed to introduce any evidence or authority to support his argument that "[a] link to the return policy was not sufficient notice." Finally, the order noted that Molica claimed in his opposition that "there was no posted return policy regarding the subject pillows on one of its pages when Molica made the purchase." However, the court found that Molica's own deposition testimony established that there was no genuine dispute over this fact.

Judgment was entered for TSI, from which Molica appealed.

## DISCUSSION

### Introduction, and Some Comments on the Briefing

Molica has filed a 21-page opening brief that candidly acknowledges that after "some handwringing over" the timeliness of his notice of appeal, he filed an opening brief that we "refused to file, citing improprieties in the form of the brief," and that he "submits this brief in an effort to comply with the rules of this court"—a brief we, of course, have filed.

TSI's respondent's brief asserts among other things that Molica's brief

4

is untimely (by "several days"), and fails to comply with some Rules of Court. Following this criticism, TSI's brief concludes with this:

"A brief that fails to comply with the California Rules of Court 8.204 content and form requirements can be stricken.  (California Rules of Court[, rule] 8.204(e)).  [¶]  Appellant submitted a twenty-one-page opening brief. The brief is incoherent, vague, lacking proper citation, fails to cite to the record, refers to matters outside the record, and is improperly formatted.  [¶] Without the necessities of an opening brief present, Respondent is left grasping for the basis of Appellant's brief.  As such, Appellant's Opening Brief should be dismissed for failure to properly format."

We do not read Molica's brief with the same jaundiced eye, and we do not accept the invitation to dismiss the appeal.  Rather, we reach the merits—and conclude it has none.

Before explaining why, we note that Molica raises several arguments under seven separate headings in what appears to be the legal argument section of his opening brief.  However, his arguments are often mixed indiscriminately throughout, with many of them repeated a number of times under various headings, and some of them not matching the headings that they fall under.  (See Cal. Rules of Court, rule 8.204(a)(1)(B) [requiring that there be a separate heading for each discrete legal issue]; see also *Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1294 [appellate court may decline to "consider the loose and disparate arguments that are not clearly set out in a heading and supported by reasoned legal argument"].)

Notwithstanding these shortcomings, we will address Molica's arguments as best we understand them, which in our view fall into two broad categories, that the trial court: (1) misinterpreted relevant statutory

provisions regarding a seller's duty to disclose its return policy, and (2) erred in finding Molica failed to establish a triable issue of fact whether TSI failed to adequately display its return policy on its website, in violation of the CLRA and the UCL. Moreover, we address Molica's arguments in a different order than he presents them in his opening brief and once we have disposed of an argument, it will not necessarily be considered again in connection with the other arguments.

Against this background, we now set forth the general legal principles governing summary judgment.

### Summary Judgment and the Standard of Review

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a)(1).) And summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) And to prevail, a defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to it. (*Id.* at p. 849; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

We review a "grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]" (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Put another way, we exercise

6

our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320: "[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit." (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

"We accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them" (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67), and we " ' "view the evidence in the light most favorable to plaintiff[ ] as the losing part[y]." ' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 254.)

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 (*Claudio*) this way: "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. (*Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140.) . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' (*Lewis v.*

7

*County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

Molica has not even attempted to meet the requirement set forth in cases such as *Claudio*. Nor could he, as the trial court got it right.

**Summary Judgment Was Properly Granted**

***The Trial Court Correctly Interpreted the Relevant Statutes Regarding a Seller's Duty to Disclose Its Return Policy***

We first consider Molica's arguments pertaining to the interpretation of Civil Code section 1723 and Business and Professions Code section 17538, subdivision (d), upon which his CLRA and UCL causes of action are based.

The CLRA makes unlawful various "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer. . . ." (Civ. Code, § 1770, subd. (a).) Civil Code section 1780, subdivision (a) authorizes "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action" for relief. [4] And Civil Code section 1770, subdivision (a) lists 28 acts or practices defined to be "unlawful" under the CLRA. Although Molica has not specified in any of his papers below which enumerated activity TSI had allegedly

---

[4] Civil Code section 1782 imposes a condition on a consumer's ability to sue for damages under the CLRA. Prior to commencing an action for damages, the consumer must give notice in writing of the particular CLRA violations and demand a correction, repair, replacement, or other rectification. (Civ. Code, § 1782, subd. (a)(1)–(2).) It is undisputed that Molica did not comply with this notice requirement. At no point prior to or during the litigation has Molica specified which activity enumerated in Civil Code section 1770 TSI had allegedly violated. Based on this (along with the fact that the opposition was filed two days late), the trial court found Molica's opposition to the summary judgment motion procedurally defective. Nonetheless, the court decided the motion on its merits. As do we.

8

violated, we understand the alleged unlawful activity to be in substance a failure to disclose a material fact. (See *McAdams v. Monier, Inc.* (2010) 182 Cal.App.4th 174, 185 ["[T]he CLRA, pursuant to its list of proscribed practices in [Civil Code] section 1770, includes the concealment or suppression of material facts"].) For an omission to be actionable under the CLRA, the defendant must have a duty to disclose the omitted fact. (See *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1258, citing *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 835; *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870, 881; *Collins v. eMachines, Inc.* (2011) 202 Cal.App.4th 249, 255.) Moreover, the plaintiff asserting a CLRA claim must show the omission was likely to deceive a reasonable consumer. (See *Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1361–1362.)

Similarly, conduct violating the UCL includes "any unlawful, unfair or fraudulent business act or practice . . . ." (Bus. & Prof. Code, § 17200.) The UCL's "coverage is 'sweeping, embracing " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.) "By proscribing 'any unlawful' business practice, 'section 17200 "borrows" violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable. [Citation.]" (*Ibid.*) "Virtually any statute or regulation (federal or state) can serve as a predicate for a UCL unlawful practice cause of action. [Citation.]" (*Gutierrez v. Carmax Auto Superstores California, supra*, 19 Cal.App.5th at p. 1265.) Thus, "a violation of the CLRA can serve as the predicate for a UCL cause of action." (*Ibid.*) In this case, the trial court construed Molica's UCL claim as derivative of his CLRA claim,

9

which characterization the parties do not dispute on appeal.

Molica's CLRA claim, and, by extension, his UCL claim, are in turn predicated on alleged violations of Civil Code section 1723 and Business and Professions Code section 17538(d).[5]  Specifically, Molica argued that under both statutes, TSI had a duty to conspicuously disclose its "no returns" policy on its website.  This duty, Molica insisted, required TSI to display the actual terms of its return policy on its website prior to accepting payment for purchase of a product, not just provide a hyperlink that, when clicked, took the user to a separate page displaying the terms of the policy.

In granting summary adjudication, the trial court rejected Molica's interpretations of the statutes.  It concluded (1) that Civil Code section 1723 is inapplicable to internet purchases, and thus the purchase at issue in this case, and (2) that posting a hyperlink on a seller's website to its return policy may under appropriate circumstances satisfy the disclosure requirement in Business and Professions Code section 17538(d).  On appeal, Molica challenges the court's conclusions based on the same arguments he raised below.  Like the trial court, we reject Molica's arguments.

Starting with Civil Code section 1723, that provision states, in relevant part: "Every retail seller which sells goods to the public in this state that has a policy as to any of those goods of not giving full cash or credit refunds, or of not allowing equal exchanges, or any combination thereof, for at least seven days following purchase of the goods if they are returned and proof of their

_____

[5] In its motion for summary judgment, TSI criticized Molica for failing to explicitly refer to Civil Code section 1723 and Business and Professions Code section 17538(d) in the FAC.  However, in its demurrer, TSI acknowledged that the FAC "alludes" to those statutory provisions.  And in his opposition to the summary judgment motion, Molica responded that his second and third causes of action are indeed based on violations of Civil Code section 1723 and Business and Professions Code section 17538(d).

purchase is presented, *shall conspicuously display that policy either on signs posted at each cash register and sales counter, at each public entrance, on tags attached to each item sold under that policy, or on the retail seller's order forms, if any*." (Italics added.)

TSI argued, and the trial court agreed, that Civil Code section 1723 applies only to "brick-and-mortar store fronts," not online purchases. As he did below, Molica argues that "completing a transaction through the internet . . . is the virtual equivalent of traditional paper form contractual agreements . . . ."

We agree with TSI's and the trial court's interpretation. Their interpretation is supported by the canon of statutory interpretation known as "noscitur a sociis," which means that "a word takes meaning from the company it keeps." (*Martin v. Thi E-Commerce, LLC* (2023) 95 Cal.App.5th 521, 532; accord, *People v. Prunty* (2015) 62 Cal.4th 59, 73 (*Prunty*).) " ' "In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list." [Citation.]' [Citation.]" (*Kaatz v. City of Seaside* (2006) 143 Cal.App.4th 13, 40; *Prunty*, at p. 73.) From this perspective, the phrase "order forms" is best interpreted in light of its relationship to the terms before it—"signs posted at each cash register and sales counter, at each public entrance, on tags attached to each item sold under that policy"—which refer to objects and locations of a physical, rather than digital, nature. (Civ. Code, § 1723, subd. (a).) Even if the phrase "order forms" could conceivably be understood in different ways in this particular context, we must stop short of construing it so expansively that we render the other terms "markedly dissimilar to the other items in the

11

list." (*Kaatz v. City of Seaside*, *supra*, 143 Cal.App.4th at p. 40; *Prunty*, at p. 73.) Accordingly, the trial court correctly found section 1723 inapplicable to online purchases, and thus the purchase at issue in this case.[6]

We turn to Business and Professions Code section 17538(d), which provides, in relevant part: "A vendor conducting business through the Internet or any other electronic means of communication shall do all of the following when the transaction involves a buyer located in this state:  [¶] (1) Before accepting any payment or processing any debit or credit charge or funds transfer, the vendor *shall disclose to the buyer in writing or by electronic means of communication, such as e-mail or an on-screen notice, the vendor's return and refund policy . . . .*" (Bus. & Prof. Code, § 17538, subd. (d)(1), italics added.)

The parties apparently agreed that Business and Professions Code section 17538(d) applies to online purchases. However, they disagreed over what constitutes sufficient disclosure under the statute. Molica argued that providing "[a] link" to its return policy on its website "is not sufficient notice" under the statute.

The trial court rejected Molica's argument, as he failed to provide any authority to support it. The court found in any event there were cases in the analogous context of online contract formation that supported a contrary position, explaining: "As a general matter, courts recognize that conspicuous hyperlinks are sufficient to place consumers on notice of material terms that can give rise to binding arbitration agreements and other contracts. (See, e.g., *Nguyen v. Barnes & Noble, Inc.* (9th Cir. 2014) 763 F.3d 1171, 1177

---

[6] But assuming it did apply, for the reasons later discussed, we would conclude that Molica failed to establish a triable issue of whether TSI conspicuously displayed its return policy on its website.

12

[(*Nguyen*)] ['the validity of [a] browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract']; *Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 588 ['We perceive no unfairness in Net2Phone's requirement that certain contractual terms must be accessed via hyperlink, a common practice in Internet business'] [forum selection clause].)" The court added that Molica "offer[ed] no authority or reason why a different rule should govern retailers' return and refund policies."

On appeal, Molica "disagrees" with the trial court's conclusion and reasserts that "[h]yperlink [n]otice [f]ails to satisfy the returns notice requirement in section 17538(d)." However, he once again fails to present any reasoned argument, much less citation to legal authority, to support his position. It is a fundamental rule of appellate procedure that the trial court's decision "is presumed to be correct and the burden is on an appellant to demonstrate . . . that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608; accord, *Denham v. Superior Court of Los Angeles* (1970) 2 Cal.3d 557, 564.) "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error. [Citations.] When a point is asserted without argument and authority for the proposition, 'it is deemed to be without foundation and requires no discussion by the reviewing court.' [Citations.] Hence, conclusory claims of error will fail." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408; see *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.] 'We are not bound to

develop appellant['s] argument for [him]. [Citation.]' "].)  These principles apply even though our review is de novo.  (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6; *Kim v. Sumitomo Bank of Calif.* (1993) 17 Cal.App.4th 974, 979; Eisenberg, et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:17.2.)  Accordingly, we will not develop Molica's arguments for him and deem his conclusory arguments waived.  Because Molica has not provided any basis for us to depart from the trial court's interpretation of Business and Professions Code section 17538(d)(1), we presume its interpretation is correct.

Even if Molica's assertions were not waived, we have no qualms with the trial court's reasoning.  As recited above, Business and Professions Code section 17538(d)(1) states that "the vendor shall disclose to the buyer in writing or by electronic means of communication, such as e-mail or an on-screen notice, the vendor's return and refund policy. "  Although it provides that disclosure can be accomplished, by, for example, communication via an "on-screen notice," it does not define what that phrase means.  Also, we have not located any cases specifically interpreting the disclosure requirement in Business and Professions Code section 17538, subdivision (d)(1).  It was thus reasonable for the trial court to find guidance in cases in analogous contexts, namely cases addressing the validity of "browsewrap" agreements, which involve websites that offer terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website.  (See *Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 862–863 (*Long*); *Nguyen, supra*, 763 F.3d at p. 1176; *Berman v. Freedom Financial Network, LLC* (9th Cir. 2022) 30 F.4th 849, 856 (*Berman*).)  As the cases explain, " 'Because no affirmative action is required by the website user to agree to the terms of a contract other than his or her

14

use of the website, the determination of the validity of the browsewrap contract depends on whether the user has actual or constructive knowledge of a website's terms and conditions.' [Citation.] More to the point here, absent actual notice, 'the validity of [a] browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract.' " (*Long*, at pp. 862–863, citing *Nguyen*, at p. 1177.)

In analyzing the existence of inquiry or constructive notice in this context, courts have looked to whether "the conspicuousness of the hyperlinks to [the contractual term(s) at issue] were sufficient to put a reasonably prudent Internet customer on inquiry notice of the browsewrap agreement's existence and contents." (*Long*, *supra*, 245 Cal.App.4th at p. 863, citing *Nguyen*, *supra*, 763 F.3d at p. 1177; accord, *Berman*, *supra*, 30 F.4th at p. 856.) In assessing conspicuousness, courts have considered various criteria, such as the size, color, contrast, and location of any text notices, as well as the obviousness of any hyperlinks. (*B.D. v. Blizzard Entertainment, Inc.* (2022) 76 Cal.App.5th 931, 947 (*B.D.*); see, e.g., *Meyer v. Uber Technologies, Inc.* (2d. Cir. 2017) 868 F.3d 66, 78 [blue color and underlining of hyperlinks to Terms of Service containing arbitration provision, along with the uncluttered design of the screen, rendered the terms reasonably conspicuous under California law]; *Dohrmann v. Intuit, Inc.* (9th Cir. 2020) 823 Fed.Appx. 482, 484 [italicization of Terms of Use contributed to its conspicuity].)

With the above legal principles in place, we turn now to Molica's challenges to the trial court's finding he failed to establish a triable issue of material fact whether TSI sufficiently disclosed its return policy.

### *Molica Failed to Establish a Triable Issue of Material Fact*

As noted, TSI's motion for summary judgment was supported by its

attorney's declaration, which attached among other exhibits Molica's responses to discovery, the transcript of Molica's deposition, and exhibits attached to the deposition.

In response to TSI's request for admissions, Molica admitted the following: "there is a button for TSI's 'return' policy from the webpage that you ordered the Sealy Tempur-Pedic Memory Foam Pillows" and "there is a button for TSI's 'return' policy during the various webpages for the ordering process from which YOU ordered the Sealy Tempur-Pedic Memory Foam Pillows."

The exhibits attached to Molica's deposition included screenshots of TSI's website, which TSI's counsel had taken the day before the deposition. Counsel represented to Molica that the screenshots captured what TSI's online ordering process looked like on its website if a user were to hypothetically purchase a pillow in the same price range as the one Molica had purchased. Prior to showing Molica the exhibits, TSI's counsel stated that he would go over them with Molica and give him an opportunity to confirm whether they were genuine depictions of TSI's website. Molica did not challenge the veracity of any of the screenshots, indeed, at one point stating, "I believe you," in response to counsel's representations about what some of the screenshots depicted.

One the exhibits is a page that shows when the user clicks on the particular pillow chosen by counsel, which page includes a section that says, "Why You'll Love It" and sets forth various features of the pillow. Underneath that, the page says, "More Details," which then provides a section off to the right side stating: "RETURN POLICY: [¶] Given their use as personal items, pillows may not be returned. Read our return policy." "Read our return policy" is displayed as a blue, underlined hyperlink.

16

Regarding this page, counsel for TSI questioned Molica as follows:

"Q. So here you have it, and it's from the web page. You have 'More Details: Feel, Features, Warranty' and 'Return Policy: Given their use as personal items, pillows may not be returned via our return policy (sic).' Did I read that portion correctly?

"A. I see that.

"Q. Did you look for anything as to—or see anything like this when you were making that purchase?

"A. No.

"Q. Okay. Would you recall if you did?

"A. Gosh—well, I don't recall."

Another exhibit shows when an item is selected for purchase and placed in the user's "cart." The page provides the "Order Summary," which lists the total amount of the purchase. This is followed by two boxes giving the user the options to either "Checkout" or "Continue Shopping." Immediately below that the page states "Questions?," along with TSI's contact information, which is then followed by a blue, underlined hyperlink stating, "What is your return policy?"

When a user wishes to checkout, he or she is directed to a page that again provides an order summary. Underneath that summary says, "What is your return policy?" with "return policy" displayed as a blue, underlined hyperlink. And underneath that, there are blank fields for shipping, billing, and payment information for the user to fill out.

Another exhibit shows a page that is generated when a user clicks on a hyperlink to TSI's return policy. That page shows the full text of the policy. As relevant here, under the heading "Pillows, Bed Linens, Bed Frames, Mattress Toppers, Slippers, Travel & Home Products," the page states:

17

"Given the personal nature of these products, we accept returns only if the item is damaged at delivery or if there is a product defect."

At his deposition, Molica testified: "When I visited the Tempur Sealy website, I go through the process, and there is—there's a hyperlink to the return policy that is more or less conspicuously placed . . . ." Additionally, when counsel went through the above exhibits with Molica, Molica confirmed there were hyperlinks directing the user to TSI's return policy throughout the online ordering process.

Relying on Molica's deposition testimony, TSI asserted as one item of its separate statement that "Molica admitted that the hyperlink to TSI's return policy was more or less conspicuously placed." Molica did not dispute this item in his own separate statement.

Another item in TSI's separate statement provides: "Mr. Molica does not dispute that the TSI website has [a] hyperlink to the return policy and also a posted return policy regarding the subject pillows on one of its pages. [¶] *See* **Exhibit N**, Deposition of Cody Molica taken on October 7, 2021 at 26:19-35:2, Pantuch Decl." This is the only item that Molica disputed in his separate statement. Relying on the same deposition testimony as that cited by TSI, Molica asserted: "Disputed. There was no posted return policy regarding the subject pillows on one of its pages when Mr. Molica made the purchase."

The trial court determined that TSI "introduced evidence that after a user clicks on one of [its] pillow products, but before a user enters any financial information, the web page conspicuously displays [TSI's] return policy, and [Molica] testified *he did not recall* whether or not he saw that policy when he made his purchase." Citing among other cases *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1 (*D'Amico*) (disapproved on

18

other grounds in *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 944), the court found Molica's "testimony contradicts [his] disputed material fact." The court added, "In any case, the only evidence [Molica] provides to support his disputed material fact is the very deposition testimony that calls that fact into question."

Challenging the order granting summary judgment, Molica makes several procedural and evidentiary arguments throughout his opening brief. For example, Molica argues that "[h]aving produced . . . evidence of causation . . . , which was not rebuttable based on the moving party's evidence, the court erred in granting summary judgment as a matter of law." This argument apparently refers to TSI's assertions on demurrer that Molica failed to allege the elements of causation and damages of his CLRA and UCL claims. The trial court disagreed with TSI, finding that Molica has "adequately [alleged] that he suffered injury in fact and ha[d] lost money or property as a result of the alleged unfair business practice," before overruling the demurrer as to the second and third causes of action. Molica relies on this ruling to argue he had adequately produced evidence of causation, which should have precluded summary judgment. This argument lacks merit.

Molica misconstrues the record and the law on demurrers in general. In overruling the demurrer as to the second and third causes of action, the trial court did not find, as Molica suggests, that he produced evidence sufficient to prove causation or any element of his CLRA and UCL claims. Molica did not even submit any "evidence" in connection with his opposition to the demurrer. Further, the court declined to consider the extrinsic evidence proffered by TSI, noting the general principles that (a) a demurrer can be used only to challenge defects that appear on the face of the pleading under attack or from matters outside the pleading that are judicially

19

noticeable (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601), and (b) facts pleaded are accepted as true. (*Czajkowski v. Haskell & White*, LLP (2012) 208 Cal.App.4th 166, 173.) Thus, in ruling on the demurrer, the court was simply not concerned with whether—and thus made no finding that— Molica made an adequate evidentiary showing to prove his allegations.

Molica also argues that summary judgment should not have been granted because the evidence that the trial court relied upon—screenshots of TSI's website—was addressed for the first time in TSI's reply papers below. In the first place, Molica did not raise this argument in the trial court and thus has forfeited it on appeal. (See *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776 ["As a general rule, a claim of error will be deemed to have been forfeited when a party fails to bring the error to the trial court's attention by timely motion or objection"].) The argument is also belied by the record. Relevant excerpts from Molica's deposition, along with the screenshots presented to him, were included, and referred to in TSI's moving papers. Indeed, that evidence and arguments based on that evidence were central to TSI's motion.

Molica also mentions in passing that "[t]here was no foundation for this evidence [(the screenshots)] the court cited in its order." But Molica did not object to the evidence on these grounds during his deposition. As mentioned above, Molica was asked by TSI's counsel to go over the screenshots to confirm their authenticity, but Molica did not challenge the evidence in that regard. In fact, at one point, he responded, "I believe you" to TSI's counsel's descriptions of one of the exhibits as displaying a hyperlink to the return policy. On top of that, Molica did not raise any objections in his papers opposing the summary judgment motion. As such, Molica has waived the ability to challenge the foundation of the evidence. (See Code Civ. Proc.,

§ 437c, subd. (b)(5) ["Evidentiary objections not made at the hearing [on a motion for summary judgment] shall be deemed waived"]; Evid. Code, § 353, subd. (a) ["A . . . finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless. . . [t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"]; *Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 584 ["questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection"].) Accordingly, we decline to consider Molica's newly raised evidentiary objections.

We turn now to Molica's substantive arguments whether he raised a triable issue of material fact concerning the disclosure of TSI's return policy.

Molica argues "the applicable standard of law was not followed by the trial court" and questions the court's application of *D'Amico*. In *D'Amico*, our Supreme court held: " '[w]here . . . there is a clear and unequivocal admission by the plaintiff, himself, in his deposition' " and the plaintiff contradicts that admission in a subsequent declaration, " 'we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' " (*D'Amico*, *supra*, 11 Cal.3d at p. 21.) "In a nutshell, the [*D'Amico*] rule bars a party opposing summary judgment from filing a declaration that purports to impeach his or her own prior sworn testimony." (*Scalf v. D.B. Log Homes, Inc.* (2005) 128 Cal.App.4th 1510, 1522.) As we explained in *Turley v. Familian Corp.* (2017) 18 Cal.App.5th 969 (*Turley*), "the classic *D'Amico* situation" occurs where "a party takes a position under oath in discovery; the opponent moves for summary judgment; and in opposition the party files a declaration that conflicts with its earlier testimony." (*Turley*, at p. 981.) "In

that situation, courts have held that the court may disregard the declaration." (*Ibid.*) Thus, *D'Amico* and its progeny only apply when a party submits a declaration or affidavit that clearly contradicts prior statements made in discovery. (See *Scalf v. D. B. Log Homes, Inc.*, *supra*, 128 Cal.App.4th at p. 1521 ["Properly applied, *D'Amico* is limited to instances where 'credible [discovery] admissions . . . [are] contradicted only by self-serving declarations of a party' " (italics omitted)]; accord, *Turley,* at pp. 981–982.)

Here, the setting is not that in *D'Amico* and its progeny—discovery followed by a declaration. (See *Turley*, *supra*, 18 Cal.App.5th at p. 982.) Molica did not file a declaration in opposing summary judgment. He did not submit his own evidence and instead relied on the evidence presented by TSI. We therefore do not find the principle in *D'Amico* applies here. Despite this, we conclude the trial court properly granted summary adjudication.

The trial court correctly found TSI met its initial burden of showing no triable issue of material fact whether it had conspicuously displayed its return policy on its website, in compliance with Business and Professions Code section 17538(d). As the court interpreted the statute, a seller "disclose[s]" its return policy if it posts on its website a hyperlink that is sufficiently conspicuous to put a reasonably prudent internet consumer on inquiry notice of the existence of the policy. (Cf. *Long*, *supra*, 245 Cal.App.4th at pp. 862–863; *B.D.*, *supra*, 76 Cal.App.5th at p. 944; *Nguyen*, *supra*, 763 F.3d at p. 1176; *Berman*, *supra*, 30 F.4th at p. 856.) Here, Molica testified at his deposition as follows: "When I visited the Tempur Sealy website, I go through the process, and . . . there's a hyperlink to the return policy *that is more or less conspicuously placed . . . .*" (Italics added.) Molica did not dispute the item in TSI's separate statement relating

22

that testimony as follows: "Mr. Molica admitted that the hyperlink to TSI's return policy was more or less conspicuously placed." Additionally, in response to TSI's request for admissions, Molica admitted "there is a button for TSI's 'return' policy from the webpage that you ordered the Sealy Tempur-Pedic Memory Foam Pillows" and "there is a button for TSI's 'return' policy during the various webpages for the ordering process from which YOU ordered the Sealy Tempur-Pedic Memory Foam Pillows." Given Molica's concessions that a hyperlink to TSI's return policy was conspicuously displayed prior to accepting payment, TSI met its burden of demonstrating the nonexistence of any triable issue of fact concerning a violation of Business and Professions Code section 17538(d) and, consequently, the derivative violations of the CLRA and the UCL.

The burden then shifted to Molica to prove a triable issue of fact as to whether it conspicuously displayed its return policy. We agree with the trial court that Molica did not meet this burden. As mentioned above, Molica's separate statement disputed only this one item in TSI's separate statement: "that the TSI website has [a] hyperlink to the return policy and also a posted return policy regarding the subject pillows on one of its pages." Molica argues that the evidence he cited to in support of this assertion—his deposition testimony—did not create a factual dispute. Specifically, he contends: "[TSI] handed [Molica] a purported screenshot their counsel allegedly had taken from his client's website . . . . He showed the photograph to [Molica] who acknowledged the disclosure language. He was asked if he had seen this same language when he made his purchase. [Molica] said: 'No.' This established a triable issue of material fact as to whether [Molica] had been exposed to an unlawful practice—the lack of disclosure that a 'no returns policy' existed through an on-screen notice prior to consummation of

23

sale." Molica goes on, "What the trial court did was use this exchange of testimony to make it seem as though [Molica] had backtracked on his immediately prior answer. The question 'would you recall if you did?' was clearly loaded. His answer, well gosh I don't recall, did nothing to contradict his prior answer that he had not seen the language he was being shown. . . ."

We are unpersuaded. Reading Molica's testimony in context, while he initially stated he did not see TSI's return policy on its website at the time of his purchase, his response to counsel's immediate follow-up question clarifies that he actually could not recall whether or not he did so. As a result, Molica's subsequent, contradictory assertion in his separate statement—that "[t]here was no posted return policy regarding the subject pillows on one of its pages when [he] made the purchase"—was speculative and not grounded in personal knowledge or recollection. To that end, the court properly found that Molica's assertion was insufficient to create triable issue of fact.

But assuming arguendo Molica did raise a triable issue of fact whether he saw the terms of TSI's return policy, such circumstance would not preclude summary judgment. Evidence of whether Molica saw the terms of the return policy goes to the issue of whether he had actual knowledge of those terms. However, as already discussed, a seller may satisfy the disclosure requirement in Business and Professions Code section 17538(d) even in the absence of actual notice—i.e., if it posts a hyperlink that is sufficiently conspicuous to put an internet consumer on constructive notice of its return policy. (Cf. *Long*, *supra*, 245 Cal.App.4th at pp. 862–863; *B.D.*, *supra*, 76 Cal.App.5th at p. 944; *Nguyen*, *supra*, 763 F.3d at p. 1176; *Berman*, *supra*, 30 F.4th at p. 856.) Here, Molica never disputed the fact that at the time of his purchase he saw a hyperlink to TSI's return policy on its website and that the hyperlink was conspicuously placed.

24

For all of the above reasons, Molica failed to establish a triable issue of fact whether TSI complied with Business and Professions Code section 17538(d).  And because Molica's CLRA cause of action was predicated on a violation of Business and Professions Code section 17538(d), the trial court properly granted summary adjudication as to that cause of action.  Likewise as to his UCL cause of action, which is derivative of his CLRA cause of action.

## DISPOSITION

The judgment is affirmed.  TSI shall recover its costs on appeal.

_____
Richman, J.

We concur:

_____
Stewart, P.J.

_____
Mayfield, J. *

*Molica v. Tempur-Sealy International, Inc.* (A167541)

      *Superior Court of Mendocino County, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

26